IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF ALASKA

CHILKAT INDIAN VILLAGE OF
KLUKWAN et al.,

                    Plaintiffs,

          v.

BUREAU OF LAND MANAGEMENT et al.,

                    Defendants.

Case No. 3:17-cv-00253-TMB

ORDER ON MOTION TO INTERVENE
(DKT. 9)

## I.    INTRODUCTION

Movants Alyu Mining Co. Inc. ("Alyu"), Haines Mining & Exploration, Inc. ("Haines"),

and Constantine North, LLC ("Constantine") have filed a motion to intervene as party

defendants.[1] For the following reasons, Movants' motion is **GRANTED**.

## II.    BACKGROUND

This case concerns a challenge to the Bureau of Land Management's ("BLM") approval

of two exploration plan proposals for a mining project in the Chilkat River watershed outside of

Haines, Alaska. Plaintiff Chilkat Indian Village of Klukwan is a federally recognized Indian tribe

whose territory encompasses the mining project area, and Plaintiffs Southeast Alaska

Conservation Council, Lynn Canal Conservation, and Rivers Without Borders are conservation

organizations based in or with ties to the region.[2] Defendants BLM and named BLM employees

are the federal bureau and officials responsible for managing the federal public lands in question.

---

[1] Dkt. 9.

[2] Dkt. 1.

1

Plaintiffs filed the present complaint on December 4, 2017.[3] In their complaint, Plaintiffs explain that BLM manages certain lands in the Chilkat River watershed, an area with significant socioeconomic and cultural importance.[4] In 2006, Constantine began exploring a parcel of this land, known as the Palmer Project, to assess potential development of a hardrock mine.[5] In 2015, Constantine submitted a Plan of Operations to BLM, seeking approval for expanded exploration activities, including construction of a road. In its review, as described by Plaintiffs, BLM "restricted consideration of mining-related cumulative impacts to ongoing, noticed exploration activities" and did not consider "[t]he effects of later stages in the mining process."[6] BLM issued a draft Environmental Assessment ("EA") finding no potentially significant impacts, and after a public comment period, approved the Plan of Operations and issued a Final EA and a Finding of No Significant Impact ("FONSI") on August 28, 2016.[7] In early 2017, Constantine submitted a modification to the Plan of Operations, seeking an 800-foot expansion of the approved road. BLM again limited review to the specific impacts of the modification, and on September 21, 2017, after a public comment period, BLM approved the road extension and issued an EA and a FONSI.[8]

Plaintiffs now contend that Defendants violated the National Environmental Policy Act ("NEPA") and the Administrative Procedure Act ("APA") by restricting their environmental

---

[3] *Id.*

[4] *Id.* at ¶¶ 40–50.

[5] *Id.* at ¶ 39; *see also* Dkt. 22 at ¶ 39.

[6] Dkt. 1 at ¶ 72; *see also* Dkt. 22 at ¶ 6.

[7] Dkt. 1 at ¶ 76; *see also* Dkt. 22 at ¶ 76.

[8] Dkt. 1 at ¶ 83; *see also* Dkt. 22 at ¶¶ 7, 83.

Case 3:17-cv-00253-TMB   Document 40   Filed 05/24/18   Page 2 of 10

impact review to ongoing exploration activities. Plaintiffs explain that under the General Mining Law of 1872 ('General Mining Law'), the discovery of a valuable deposit "creates a vested property right associated with the land."[9] The Federal Land Policy and Management Act ("FLPMA") authorizes BLM to withdraw public lands from the operation of certain laws, including the General Mining Law, but provides that any land withdrawals are subject to valid existing rights.[10] Under NEPA, agencies are required to consider potential environmental impacts before proceeding with any major federal action, and such consideration "must be timely, in order meaningfully to inform the agency's decision making while the agency retains full discretion to prevent potential impacts."[11]

Plaintiffs assert that while BLM currently has "unconstrained discretion" to protect the land encompassing the Palmer Project, the agency "is likely to lose this full discretion before its next decision point on the Palmer Project," as Constantine may discover a valuable deposit and thereby acquire certain vested rights pursuant to the General Mining Law.[12] Accordingly, Plaintiffs contend, BLM should have considered the potential impacts of development of a mineral deposit when reviewing the Plan of Operations and the modification, as in light of the statutory scheme described above, "[c]onsideration of such impacts at a later time would not be timely" under NEPA.[13] Plaintiffs submit that BLM's decisions to approve these proposals were

---

[9] Dkt. 1 at ¶ 25.

[10] *Id.* at ¶ 28.

[11] *Id.* at ¶ 86.

[12] *Id.* at ¶¶ 8, 88.

[13] *Id.* at ¶ 88.

therefore "arbitrary, capricious, and not in accordance with the law" in violation of NEPA and the APA, and seek declaratory and injunctive relief.[14]

On January 29, 2018, Movants filed a motion to intervene.[15] Movants Alyu and Haines together hold 340 unpatented federal mining claims in the territory of the Palmer Project.[16] Movant Constantine has leased these claims from Alyu and Haines and also holds the Plan of Operations and modification approved by BLM.[17] Movants explain that their interests "would be adversely impacted by any preliminary or permanent injunctive relief affecting the Palmer project, or by a merits decision with the ultimate effect of requiring BLM to delay or vacate the approved 2016 [Plan of Operation] and 2017 Modification."[18] Movants thus seek to intervene as party defendants as of right under Fed. R. Civ. P. 24(a)(2), or alternatively, to intervene as a matter of discretion under Fed. R. Civ. P. 24(b) or to intervene only with respect to remedies and be given leave to file *amicus* briefs on the merits.[19]

Plaintiffs do not oppose the motion to intervene,[20] and Defendants have not filed a response. This motion is now ripe for resolution.

---

[14] *Id.* at ¶ 89.

[15] Dkt. 9.

[16] *Id.* at 2.

[17] *Id.*

[18] *Id.* at 3–4

[19] *Id.* at 3.

[20] Dkt. 21.

### III.    ANALYSIS

Fed. R. Civ. P. 24 provides for both intervention of right and permissive intervention.

Fed. R. Civ. P. 24(a)(2) requires a court, on "timely motion," to permit anyone to intervene who

"claims an interest relating to the property or transaction that is the subject of the action, and is

so situated that disposing of the action may as a practical matter impair or impede the movant's

ability to protect its interest, unless existing parties adequately represent that interest." Fed. R.

Civ. P. 24(b)(1)(B) provides that a court, on "timely motion," may permit anyone to intervene

who "has a claim or defense that shares with the main action a common question of law or fact."

The Ninth Circuit has established a four-part test for intervention as of right under

Rule 24(a)(2):

> (1) the motion must be timely; (2) the applicant must claim a
> "significantly protectable" interest relating to the property or
> transaction which is the subject of the action; (3) the applicant
> must be so situated that the disposition of the action may as a
> practical matter impair or impede its ability to protect that interest;
> and (4) the applicant's interest must be inadequately represented by
> the parties to the action.[21]

An applicant for intervention bears the burden of showing that these four elements are met.[22] In

applying this test, courts are "guided primarily by practical and equitable considerations," and

construe Rule 24(a)(2) "broadly in favor of proposed intervenors."[23] Movants submit that they

meet each part of this test.[24]

---

[21] *Wilderness Soc. v. U.S. Forest Serv.*, 630 F.3d 1173, 1177–78 (9th Cir. 2011) (citing *Sierra Club v. U.S. EPA*, 995 F.2d 1478, 1481 (9th Cir.1993)).

[22] *Citizens for Balanced Use v. Montana Wilderness*, 647 F.3d 893, 897 (9th Cir.2011).

[23] *United States v. City of Los Angeles, Cal.*, 288 F.3d 391, 397 (9th Cir. 2002) (internal citations omitted).

[24] Dkt. 9 at 11–18.

Case 3:17-cv-00253-TMB   Document 40   Filed 05/24/18   Page 5 of 10

## A. Timeliness

In assessing timeliness, courts consider "(1) the stage of the proceedings; (2) whether the parties would be prejudiced; and (3) the reason for any delay in moving to intervene."[25] In the present case, Plaintiffs filed their complaint on December 4, 2017, and Movants motioned to intervene on January 29, 2018, before Defendants filed their answer. The motion to intervene did not reflect any delay by Movants, was made at an early stage in the case, and did not pose a risk of prejudice to other parties at that stage.[26] The Court therefore finds that the motion was timely.

## B. Significantly protectable interest

"A putative intervenor will generally demonstrate a sufficient interest for intervention of right in a NEPA action, as in all cases, if it will suffer a practical impairment of its interests as a result of the pending litigation.'"[27] The operative inquiry is "whether the interest is protectable under some law and whether there is a relationship between the legally protected interest and the claims at issue."[28] A prospective intervenor is not required to show that the asserted interest is protected by the same statute under which the litigation is brought.[29]

---

[25] *Nw. Forest Res. Council v. Glickman*, 82 F.3d 825, 836 (9th Cir. 1996), as amended on denial of reh'g (May 30, 1996).

[26] *See, e.g., Citizens for Balanced Use*, 647 F.3d at 897 ("Applicants filed their motion to intervene in a timely manner, less than three months after the complaint was filed and less than two weeks after the Forest Service filed its answer to the complaint.").

[27] *Wilderness Soc.*, 630 F.3d at 1180 (quoting *California ex rel. Lockyer v. United States*, 450 F.3d 436, 441 (9th Cir. 2006)).

[28] *Id.* (quoting *Sierra Club*, 995 F.2d at 1484).

[29] *Sierra Club*, 995 F.2d at 1484, overturned on other grounds by *Wilderness Soc.*, 630 F.3d 1173; *see also Yount v. Salazar*, No. CV 11-08171-PCT-FJM, 2012 WL 1378684, at *2 (D. Ariz. Apr. 20, 2012).

6

Movants claim a number of interests in this case. Movants Alyu and Haines have an interest in their 340 unpatented mining claims, which are protected under the FLPMA and the General Mining Law, and all Movants "have an interest in the way NEPA applies to this case."[30] Movant Constantine has interests in "protecting its opportunity to complete exploration on its 340 leased federal [] mining claims," "pursuing its opportunity" to explore this leased land, and maintaining "the recreational and sightseeing interests of its employees and visitors to the project.[31] Movants further contend that they will all face "virtually certain exploration delay and economic losses" if Plaintiffs succeed on any of their claims, and that their "interest in avoiding the significant burdens imposed by a major alteration, delay, or vacation of the Palmer project EA or Decision Record is also a sufficient reason for intervention as of right in this case."[32]

Movants' asserted interests support their right to intervene. Alyu and Haines' federal mining claims and Constantine's lease to explore these claims are legally protected interests and Movants all have economic interests in continuing to pursue exploration activities on these claims.[33] Any change to or revocation of BLM's approvals may affect Movants' rights with respect to these holdings.[34]

---

[30] Dkt. 9 at 13.

[31] *Id.* at 14.

[32] *Id.* at 15.

[33] As described in their motion, Movants have already spent significant resources on exploration activities. *See* Dkt. 9 at 16.

[34] *See, e.g.*, *Ctr. for Biological Diversity v. E.P.A.*, No. 11-CV-00293-JCS, 2013 WL 1729573, at *6 (N.D. Cal. Apr. 22, 2013) ("Plaintiffs allege that the EPA failed to undergo required consultations before issuing the pesticide registrations. Because Plaintiffs' claim against the EPA may affect the pesticide registrations, the Court finds that the applicants have a protectable interest in the subject of this action, which may, as a practical matter, be impaired by this

7

*C. Impair or impede ability to protect interest*

Fed. R. Civ. P. 24(a)(2) further requires that the "disposition of the action may as a practical matter impair or impede" the ability of a potential intervenor to protect its asserted interests. If Plaintiffs in the present case prevail, BLM's past approvals could be enjoined and/or BLM may be required to consider longer-term mining impacts in any future environmental assessments of the Palmer project. Such outcomes could, as a practical matter, prevent or significantly restrict exploration activities on Movants' mining claims.[35] Movants would not have an alternate forum in which to challenge such a decision, and could potentially be bound by any interpretations established in the course of this case.[36] Movants have thus shown that disposition of this case in their absence could impair their ability to protect their interests.

*D. Inadequate representation by parties*

In evaluating whether existing parties adequately represent a potential intervenor's interests, courts in the Ninth Circuit consider three factors: "(1) whether the interest of a present

---

litigation."); *Sequoia ForestKeeper v. Price*, No. 1:16-CV-0759 AWI JLT, 2017 WL 56655, at *1 (E.D. Cal. Jan. 5, 2017) ("SFP is a California corporation that has been contracted to perform the logging activities at issue . . . at a minimum, SFP's existing timber contracts are 'significantly protectable' in relation to this litigation."); *Envtl. Def. Ctr. v. Bureau of Safety & Envtl. Enf't*, No. CV 14-9281 PSG (SHX), 2015 WL 12734012, at *3 (C.D. Cal. Apr. 2, 2015) ("Exxon has a personal financial interest in this litigation because it has 'invested significant resources in obtaining' twenty-nine of the challenged APDs and APMs and in 'conducting drilling activities and operations on the wells associated' with those permits.").

[35] *See* dkt. 9 at 15–16 ("Were the Court to decide that the federal claims require a mine development plan in advance of the completion of exploration it would make it more difficult for them to be leased to a responsible exploration company because such a condition would be very difficult and expensive to meet and the Alyu and Haines claims will lose value to their shareholders/investors.").

[36] *See California ex rel. Lockyer v. United States*, 450 F.3d 436, 443 (9th Cir. 2006) ("If, as a result of this litigation, the Weldon Amendment is struck down, or its sweep is substantially narrowed, the proposed intervenors will have no alternative forum in which they might contest that interpretation of the Amendment.").

8

party is such that it will undoubtedly make all the intervenor's arguments; (2) whether the present party is capable and willing to make such arguments; and (3) whether the would-be intervenor would offer any necessary elements to the proceedings that other parties would neglect."[37] In general, the "burden of showing inadequacy of representation is 'minimal' and satisfied if the applicant can demonstrate that representation of its interests 'may be' inadequate."[38] However, when a potential intervenor and an existing party "share the same ultimate objective," a presumption of adequacy arises, and the potential intervenor must make a "compelling showing of inadequacy of representation" to rebut this presumption.[39]

In the present case, Defendants and Movants both seek to defend BLM's approvals of the Plan of Operations for the Palmer Project and the modification to the Plan of Operations. However, although Defendants and Movants share the same ultimate objective, Movants' interests appear to be "narrower than that of the government and therefore may not be adequately represented."[40] The validity of BLM's approvals has specific legal and financial consequences for Movants, in contrast to the broader and more diffuse considerations facing Defendants.[41]

---

[37] *United States v. City of Los Angeles, Cal.*, 288 F.3d 391, 398 (9th Cir. 2002); *see also Citizens for Balanced Use v. Montana Wilderness Ass'n*, 647 F.3d 893, 898 (9th Cir. 2011).

[38] *Citizens for Balanced Use*, 647 F.3d at 898 (quoting *Arakaki v. Cayetano*, 324 F.3d 1078, 1086 (9th Cir.2003), as amended (May 13, 2003)).

[39] *Id.*

[40] *Arakaki*, 324 F.3d at 1087.

[41] *See e.g.*, *Sw. Ctr. for Biological Diversity v. Berg*, 268 F.3d 810, 823–24 (9th Cir. 2001) ("Applicants would likely offer important elements to the proceedings that the existing parties would likely neglect. The priorities of the defending government agencies are not simply to confirm the Applicants' interests in the Plans, the [Implementation Agreement], and the City's [Incidental Take Permit]. The interests of government and the private sector may diverge. On some issues Applicants will have to express their own unique private perspectives and in essence carry forward their own interests in the [Implementation Agreement].")); *Syngenta Seeds, Inc. v. Cty. of Kauai*, No. CIV. 14-00014BMK, 2014 WL 1631830, at *7 (D. Haw. Apr. 23, 2014) ("the

9

Additionally, as Movants stress in their motion, an injunction would cause specific harms to Movants, and these harms would be relevant to the Court's balancing of hardships in considering injunctive relief.[42] Accordingly, Movants have shown that their interests will not be adequately represented by Defendants. As Movants have made the required showing under each of the four prongs of the relevant test, Movants have the right to intervene in this case pursuant to Fed. R. Civ. P. 24(a)(2).

## IV.    CONCLUSION

For the foregoing reasons, Movants' motion to intervene as of right under Fed. R. Civ. P. 24(a)(2) is **GRANTED**.

Dated at Anchorage, Alaska, this 24th day of May, 2018.

/s/ Timothy M. Burgess
TIMOTHY M. BURGESS
UNITED STATES DISTRICT JUDGE

---

Kauai residents living next to Plaintiffs' fields are the direct recipients of the purported benefits of Ordinance 960. Their interests in upholding the law are decidedly more palpable than the County's generalized interest.").

[42] Dkt. 9 at 17.